# United States Court of Appeals
## For the First Circuit

No. 04-1178

UNITED STATES OF AMERICA,

Appellee,

v.

KEVIN KELLEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Torruella, Lynch and Lipez,
Circuit Judges.

Syrie D. Fried, with whom the Federal Defender Office was on brief, for appellant.
James F. Lang, Assistant U.S. Attorney, with whom Donald L. Cabell, Assistant U.S. Attorney, and Michael J. Sullivan, U.S. Attorney, were on brief, for appellee.

March 22, 2005

**LYNCH**, **Circuit Judge**.  In January of 2002, Kevin Kelley put a gun to the head of a man he thought was the manager of the Best Western Roundhouse Suites Hotel in Boston, in an attempt to steal the hotel receipts from that day.  The man was not the manager, but was just a customer in his car in the parking lot, and all Kelley received was $70.00.  As a result of this incident, Kelley was charged federally for being a felon in possession of a firearm (the gun Kelley used that night), 18 U.S.C. § 922(g)(1), and charged in state court for the underlying crime of armed robbery.  Since Kelley met the definition of an armed career criminal under 18 U.S.C. § 924(e), a conviction on the federal charges would have meant a sentence of at least 15 years in prison by a statutory mandatory minimum.

In Massachusetts there is no separate federal pre-trial detention facility.  Instead, the United States Marshals Service contracts with the state and its counties to house detained federal prisoners at state and county facilities.  This, in turn, brings into play the provisions of the Interstate Agreement on Detainers ("IAD"), which is the subject of this appeal.  18 U.S.C. App. 2 § 2.

During his state and federal prosecutions, Kelley was alternately a state, federal, and again a state detainee as a result of what some might call a comedy of errors and others would call a series of mistakes and negligence by various federal and

-2-

state entities.  This includes the Marshals Service declining to pay the bill properly submitted to it by the state for Kelley's stay as a federal detainee at Norfolk County Jail.  Further, although Kelley was a federal pre-trial detainee from the time he was indicted on federal charges on September 17, 2002, he was improperly released from federal to state custody on October 4, 2002, in order to appear in state court for proceedings related to his state armed robbery charges, to which he pled guilty.  On October 8, 2004, Kelley was sent to serve a state sentence on these charges at MCI-Concord, again being placed in state custody. Because he was a federal pre-trial detainee at the time, releasing Kelley into state custody violated the anti-shuttling provisions of the IAD.  See id. Art. III.  Those provisions are intended to prevent "uncertainties which obstruct programs of prisoner treatment and rehabilitation" resulting from the existence of outstanding detainers lodged against prisoners, as well as to alleviate "difficulties in securing speedy trial of persons already incarcerated in other jurisdictions."  Id. Art. I.

When a violation of the IAD occurs, and when, as here, the United States is the receiving government (because Kelley was in state custody when he was indicted on federal charges), "any order of a court dismissing any indictment, information, or complaint [for an IAD violation] may be with or without prejudice." 18 U.S.C. App. 2 § 9(1).  The IAD further states:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors:  The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice . . . .

Id.

Kelley moved to dismiss with prejudice the federal charges for violation of the anti-shuttling provisions of the IAD. The district court, after hearing evidence, wrote a comprehensive and thoughtful twenty-five page decision, guided by the Supreme Court's opinion in Alabama v. Bozeman, 533 U.S. 146 (2001).  See United States v. Kelley, 300 F. Supp. 2d 224 (D. Mass. 2003).  The opinion considered and weighed all of the appropriate factors.  The court noted some possible prejudice to Kelley from the violation: it was possible Kelley could see a longer period of confinement as a result of the snafu.  Id. at 234.  But this was, in the court's judgment, outweighed by the other factors, namely, that the offense involved was a serious one, and that the government had not willfully violated the IAD.  Id. at 233-34.  The district court concluded that the federal charges must be dismissed because the IAD had been violated, but that the dismissal was without prejudice.  Id. at 235.

-4-

There is no dispute that the IAD was violated; the only dispute on appeal is as to the remedy of dismissal without prejudice.[1]

**I.**

This court has not before addressed the question of the standard of review for challenges to a trial court's decision under the IAD to dismiss an indictment with or without prejudice. In analogous cases under the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, we review the trial court's rulings of law de novo, its factual findings for clear error, United States v. Ramirez, 973 F.2d 36, 38 (1st Cir. 1992), and its ultimate ruling for abuse of discretion, United States v. Trueber, 238 F.3d 79, 87 (1st Cir. 2001). We now hold the same standard applies to rulings on motions to dismiss federal prosecutions under the IAD.

Kelley's principal argument is not that the district court abused its discretion by applying wrong legal principles or that there is clear error in the factual findings.[2] Rather, he

---

[1]The government then on March 26, 2003 obtained a superseding indictment against Kelley and his accomplice, again charging a violation of 18 U.S.C. § 922(g)(1). On May 16, 2003 Kelley pled guilty to the federal charges. As it turned out, the court sentenced in a way which ensured that the delay occasioned earlier did not prejudice Kelley.

[2]Kelley does claim that the district court erred in finding that, after his initial appearance on federal charges on September 17, he was not returned to state custody when he was sent back to Norfolk County Jail. However, since the district court did find that an IAD violation occurred due to his subsequent return to state custody, even were this finding clearly erroneous it would

-5-

argues that the court gave too little weight to the effect of reprosecution on the goal of securing compliance with the IAD, "mischaracterized the egregiousness of the [IAD] violation," and "gave too much weight to the seriousness of the offense without articulating why this factor overrode other statutory factors."

Kelley has an uphill battle in arguing that an abuse of discretion arises from the relative weight given by the district court to the correct factors. Assuming no error of law as to the factors to be considered and no error of fact, the weight a court gives to the factors is usually upheld absent a clear error of judgment. United States v. Taylor, 487 U.S. 326, 337 (1988) ("[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not be lightly disturbed."); United States v. Hastings, 847 F.2d 920, 924 (1st Cir. 1998) (holding, in the context of a Speedy Trial Act violation, that "when all proper and no improper facts are considered," the district court's determination will be upheld unless "the court in weighing those factors commits a clear error

---

not require a reversal of the district court's decision. Nor does Kelley argue as much; he claims that this erroneous finding may have affected the balancing analysis. In any event, the district court's finding that he was not returned to state custody after his initial appearance on September 17 is supported by substantial evidence and certainly did not constitute clear error.

of judgment" (quoting <u>United States</u> v. <u>Kramer</u>, 827 F.2d 1174, 1179 (8th Cir. 1987))).

Here, a simple reading of the district court's careful opinion itself shows the futility of the attack. The soundness of the reasoning speaks for itself. We have little to add to the substantive analysis in the district court's opinion and affirm in large part on that basis.

It is worth making one additional point. Kelley makes the serious charge that the district court "mischaracterized the egregiousness of the violation." This argument is both unfounded and unfair. The court correctly found this was an inadvertent administrative error and that there was no willful violation. There is no evidence to the contrary.

We recognize that <u>Bozeman</u> held there were no exceptions to finding violations of the IAD for "technical" or "de minimis" missteps. 533 U.S. at 153-54. <u>Bozeman</u> overruled the contrary rule stated in <u>United States</u> v. <u>Taylor</u>, 861 F.2d 316 (1st Cir. 1988), which this court had cited favorably in <u>United States</u> v. <u>Hunnewell</u>, 891 F.2d 955, 959 (1st Cir. 1989). Under <u>Bozeman</u>, the question of whether a violation is technical or de minimis has to do with whether there is a violation of the IAD at all, not with the appropriateness of a particular remedy of dismissal with prejudice or without prejudice. The circumstances under which the violation occurred is an entirely appropriate factor to consider in the

analysis of whether the court abused its discretion in dismissing the indictment without prejudice.

Like the district court, we think this would be a materially different case if the United States had acted willfully or if there were a pattern of such violations in this district.[3] Toward that end, we inquired of government counsel at oral argument what was being done to see that this situation did not replay itself. We received assurances that there will be training both for the prosecutors and the marshals in the district on the requirements of the IAD to prevent recurrence of this type of violation.

The judgment is easily **<u>affirmed</u>**. So ordered.

---

[3]Kelley attempts to argue that such a pattern exists, however he relies on only three cases decided more than a decade ago, and none involving the Norfolk County Jail. We can find no pattern of IAD violations similar to the instant case.