# United States Court of Appeals
## For the First Circuit

No. 14-1499

UNITED STATES OF AMERICA,

Appellee,

v.

DAMIEN GOUSE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Steven A. Feldman, with whom Feldman and Feldman was on brief, for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Peter F. Neronha, United States Attorney, was on brief, for appellee.

August 21, 2015

**HOWARD, <u>Chief Judge</u>**.  Appellant-Defendant Damien Gouse was serving a state sentence in a Massachusetts prison when the federal government indicted him in the District of Rhode Island for, <u>inter</u> <u>alia</u>, being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) & 924(e).  The government then brought Gouse to Rhode Island to face those charges but returned him to Massachusetts before the federal case was resolved.  This ostensibly violated the anti-shuttling section of the Interstate Agreement on Detainers ("IAD"); a provision which required the United States to complete all proceedings against Gouse before sending him back to Massachusetts.  As a result, the district court dismissed the federal case without prejudice.  The United States then re-indicted Gouse, which he unsuccessfully moved to dismiss. Gouse now argues that the IAD violation in the first federal case, paired with the government's alleged attempt to circumvent the IAD in the second federal case, required dismissal of all federal charges against him.  Finding no errors, we affirm.

**I.**

On February 8, 2008, the federal government charged Gouse in the District of Rhode Island with a number of gun and drug offenses.  ("First Federal Charges")  The state of Rhode Island also charged Gouse with analogous state offenses.  ("RI Charges") Neither jurisdiction took Gouse into custody at that time.

The following month, the Commonwealth of Massachusetts charged Gouse with unrelated gun and assault crimes. ("Mass Charges") With the First Federal Charges still pending, Gouse was convicted of the Mass Charges and, in September 2009, sentenced to consecutive prison terms of 15-20 years and 2-5 years, to be served in a Massachusetts state facility. A federal arrest warrant respecting the First Federal Charges was forwarded to that prison and remained on file there through 2013.

During this incarceration, Gouse requested that Rhode Island resolve the RI Charges. He was thus moved to a correctional facility in that state in late 2009 and subsequently arraigned. A federal detainer for the First Federal Charges was lodged against him there, and a federal grand jury soon indicted him. At his federal arraignment, the Magistrate Judge informed Gouse that he would be housed at the Rhode Island state prison. Gouse did not object.

To avoid duplicative prosecutions, Rhode Island dismissed the RI Charges in January 2010 and transferred Gouse back to Massachusetts to serve that state's sentence. The First Federal Charges were still pending at the time of that transfer. Accordingly, at a status conference in the federal case in March 2010, Gouse referenced this potential IAD anti-shuttling violation; i.e., he had been returned to Massachusetts before the federal claims were resolved. Out of an abundance of caution, the federal

-3-

government moved to dismiss the matter without prejudice.  Gouse, however, requested dismissal with prejudice.  The district court (Smith, C.J., D.R.I.) held a hearing at which it adopted the government's approach.  Gouse was again returned to Massachusetts to continue serving his state sentence.

About one year later, a federal grand jury in Rhode Island re-indicted Gouse on the same gun and drug charges. ("Second Federal Charges")  The government secured Gouse's presence from Massachusetts for this second federal case through a writ of habeas corpus ad prosequendum.  During his arraignment, and in a later-filed motion to dismiss, Gouse argued that the shuttling violation from the First Federal Charges, coupled with the government's allegedly improper use of a habeas writ in the second federal case, warranted dismissal of this new indictment.  The district court (McConnell, J., D.R.I.) rejected that contention.

After trial, Gouse was convicted on a federal felon in possession of a firearm charge (the other counts had previously been dismissed) and, on March 25, 2014, was sentenced to ten years in prison to run concurrently with the Massachusetts sentence.  At the conclusion of those proceedings, the U.S. government returned Gouse to the Massachusetts prison facility.

This timely appeal followed.

**II.**

We review a decision on a motion to dismiss under the IAD for abuse of discretion. United States v. Kelley, 402 F.3d 39, 41 (1st Cir. 2005). As always, any legal questions implicated by that conclusion are reviewed de novo and any factual findings for clear error. Id.

**III.**

To facilitate the transfer of prisoners from one jurisdiction to another, the federal government and a majority of states have consented to the IAD. The provision at issue here, the "anti-shuttling" section, is triggered when an inmate is imprisoned in one state (the "sending state"), and another jurisdiction (the "receiving state") utilizes a detainer to obtain custody of the individual for proceedings on outstanding charges. 18 U.S.C. App. 2 § 2, Arts. II & IV(a). The receiving state must then resolve the claims in the charging document which brought the defendant into its jurisdiction, before returning the defendant to the sending state. Art. IV(e). The provision was designed to minimize the disruption to an inmate's full and meaningful participation in the available rehabilitative programs offered by a sending state. See United States v. Currier, 836 F.2d 11, 13-14 (1st Cir. 1987).

In this case, Gouse alleges a violation of that section of the IAD. Though his arguments are somewhat difficult to parse, three issues percolate to the surface. First, is whether the

putative shuttling violation in the first federal case required dismissal of the second federal proceeding.  Since it did not, our inquiry then shifts to whether the court abused its discretion in dismissing the first federal case without prejudice and, whether it erred in failing to dismiss the second federal indictment.  We address each issue in-turn.

**i.**

A threshold question in this case is whether an IAD violation from a federal case dismissed without prejudice nonetheless requires the dismissal of a subsequent, identical proceeding.  Gouse seems to believe that the first violation required dismissal of the second case since, in his view, the government was simply attempting "to circumvent the agreement by re-indicting him for the exact same conduct."

That perspective, however, contradicts the plain language of the agreement.  A violation of the anti-shuttling provision of the IAD generally warrants dismissal with prejudice.  18 U.S.C. App. 2 § 2, Art. IV(e); see Alabama v. Bozeman, 533 U.S. 146 (2001) (holding that there is no de minimis exception when a state violates the IAD).  But, the Act explicitly carves out an exception when the United States is the receiving state.  In such matters, the court has a choice: the dismissal can be with or without prejudice.  18 U.S.C. App. 2 § 9(1).  To make that determination, courts are tasked with considering: the seriousness of the

-6-

offenses; the reasons underpinning the violation; and the impact of a re-prosecution on the administration of both the IAD and justice. Id.

For this exception to have any meaning, a violation from one case (where the U.S. is the receiving state) cannot automatically require the dismissal of a subsequent proceeding. As the government notes, finding otherwise would convert every dismissal without prejudice into one with prejudice; it would just be entered in subsequent litigation. It would, moreover, render moot the provision of the exception which explicitly calls on courts to consider whether the government should have a second bite at the apple. Gouse's position would thus contravene our duty to try and give every word or phrase of a law meaning. See Duncan v. Walker, 533 U.S. 167, 174 (2001).

The legislative history of the exception -- to the extent relevant given the clarity of the text -- further bolsters this reading. The United States initially signed on to the IAD in 1970, An Act to Enact the Interstate Agreement on Detainers into Law, Pub. L. 91-538, 84 Stat. 1397 (1970), though it did not add this exception until 1988, Interstate Agreement on Detainer Act Amendments, Pub. L. 100-690, § 7059, 102 Stat. 4181 (1988). This exception was only adopted because Congress was increasingly concerned with cases like United States v. Schrum, 504 F. Supp. 23, 28 (D. Kan. 1980), in which courts were consistently dismissing

-7-

federal prosecutions (with prejudice) for <u>de minimis</u> IAD violations. Congress, therefore, sought to "remove the unnecessarily harsh sanction of automatic dismissal with prejudice," and, instead, leave the matter to the court's discretion. 134 Cong. Rec. S17371 (1988). It would be curious (if not plainly bizarre) for Congress to provide courts with this discretion to address an IAD violation, while simultaneously demanding a subsequent dismissal for the very same error.

We are confident that a violation of the IAD in one case dismissed without prejudice does not <u>automatically</u> mandate dismissal in a subsequent proceeding. To tackle the remainder of Gouse's claims then, we evaluate each motion to dismiss.

**ii.**

Although Gouse implies that the First Federal Charges should have been dismissed with, rather than without, prejudice he fails to provide us with any reasons why.[1] Thus, to the extent he takes issue with the decision on the First Federal Charges, he has failed to provide sufficient argument and we deem it waived. <u>See</u> <u>United States</u> v. <u>Oladosu</u>, 744 F.3d 36, 39 (1st Cir. 2014) ("Because the argument is underdeveloped, it is waived.").

---

[1] The government concedes that Gouse could not have likely appealed the dismissal without prejudice at the time the district court rendered that decision. <u>See</u> <u>United States</u> v. <u>Fermia</u>, 57 F.3d 43, 49 (1st Cir. 1995).

Nonetheless, even giving Gouse the benefit of the doubt and reviewing the first decision on our own accord, we would still find that the district court did not abuse its discretion in choosing the "without prejudice" path. As noted, the IAD provides a number of factors for courts to consider when making this determination. 18 U.S.C. App. 2 § 9(1). We have said that "[a]ssuming no error of law as to the facts to be considered and no error of fact, the weight a court gives to the factors is usually upheld absent a clear error of judgment." Kelley, 402 F.3d at 42.

Here, the district court engaged in a reasonable analysis of the relevant factors which we can quickly address. First, the court concluded that the charges related to a "distribution-level quantity of drugs and a gun that was sufficient to trigger a 924(c) charge," and thus were extremely serious offenses that "should not go completely without the potential of prosecution just by virtue of this technical violation." Second, the court stated "I just don't see anything here other than what amounts to a clerical and administrative mistake." In other words, the violation was a pure accident that only required a "without prejudice" dismissal. Given those two conclusions, the district court reasonably determined that re-prosecution was both in the interest of the IAD and in the interest of justice.

The district court carefully went through the different factors, weighed the potential of re-prosecution with the harm

-9-

caused by the accidental violation, and then rationally concluded that dismissal without prejudice was proper. In doing so, it acted well within the bounds of its discretion. See, e.g., id.; United States v. McKinney, 395 F.3d 837 (8th Cir. 2005); United States v. Gezelman, 522 F. Supp. 2d 344 (D. Mass. 2007). We, quite simply, can find no reason to question the district court's determination.

**iii.**

As for the Second Federal Charges, Gouse contends that in using a writ of habeas corpus ad prosequendum, the government did an "end-run" around the IAD. He relies extensively on United States v. Mauro, 436 U.S. 340 (1978), to suggest that the mere use of the writ itself was problematic. Although his briefing is murky, Gouse also seems to be saying that this was particularly egregious because of the prior IAD violation. That is, after being called out for an IAD anti-shuttling violation, the government deliberately and, allegedly in bad faith, sought to avoid the strict requirements of the IAD by utilizing a writ.

The problem for Gouse, as he actually acknowledges in his own brief, is that the use of a habeas writ alone is not proscribed by Mauro. Instead, all Mauro says is that once the IAD is implicated, its requirements must be followed even if a jurisdiction attempts to obtain custody of a prisoner by way of a habeas writ. Mauro, 436 U.S. at 361-62 (noting that the writ can constitute a "written request for temporary custody"); United

States v. Pleau, 680 F.3d 1, 5 (1st Cir. 2012) (en banc) (explaining that in such a circumstance, "the writ had been used as part of the IAD process.") To prevail then, Gouse cannot just say that the government intentionally avoided the IAD through a writ, or that the initial error somehow enhanced the requirements on the government such that an unyielding adherence to the letter of the IAD was required.[2] Instead, he must still show that a specific aspect of the IAD -- for instance, the anti-shuttling provision or the speedy trial requirement -- was violated.[3]

Gouse fails to do so. Indeed, he does not even point to a specific rule or requirement that the government allegedly ignored in this second federal case. Nor does he explain how a request under the IAD would have been any different than the path taken by the government. In fact, Gouse's counsel was asked several times at oral argument to explain the precise harm that was caused by the government's action; he was repeatedly unable to do so.

---

[2] Such an argument is particularly dubious in this case where the federal government was blameless for the circumstances surrounding the anti-shuttling violation.

[3] We do note that there are more difficult questions embedded in this case; most notably, whether a federal arrest warrant received by a state prison constitutes a detainer triggering the IAD and, if so, whether it continues to apply in a case which follows a proceeding dismissed without prejudice. As the government urges, we will instead assume that the IAD applies in such circumstances (and thus applies in both federal cases here) without reaching those more difficult questions.

Of course, Gouse does reference the anti-shuttling provision throughout his brief. To the extent he is again relying on that section, his claim quite plainly fails for a simple reason: no shuttling violation occurred in the second federal case. Instead, Gouse was incarcerated in a Massachusetts facility and was then moved to a federal facility in Rhode Island once the indictment for the Second Federal Charges issued. He was housed at a federal facility through and including his federal sentencing on March 25, 2014. It was only at the end of this second federal case that Gouse was returned to the Massachusetts state facility. As no violation of the IAD occurred (shuttling or otherwise), no dismissal was necessary.

## IV.

Accordingly, any error that occurred in the first case was addressed by the court's proper decision to dismiss the matter without prejudice. Since the second case was also then handled without error, we **affirm**.