# United States Court of Appeals
## For the First Circuit

No. 19-1932

KEVIN M. KELLEY,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

_____

Before

Lynch, Thompson, and Barron,
Circuit Judges.

_____

Inga L. Parsons for appellant.
Robert E. Richardson, Assistant United States Attorney, with whom Andrew E. Lelling, United States Attorney, was on brief, for appellee.

_____

February 25, 2021

_____

.

**THOMPSON**, **Circuit Judge**.  Citing 28 U.S.C. § 2255 (the federal habeas-corpus statute), Kevin Kelley asked a district judge to vacate his conviction and sentence stemming from a 2003 plea agreement for being a felon in possession of a firearm.[1] Pertinently here, Kelley's motion ran along these lines.  Criminal Procedural Rule 7 says that an indictment "must be signed by" a government lawyer.  See Fed. R. Crim. P. 7(c)(1).  But an assistant United States attorney ("AUSA" for short) in Kelley's case signed the indictment in 2003 despite having a suspended license to practice law (the AUSA had not paid his bar dues).[2]  And to Kelley's way of thinking, that problem invalidated the indictment and so robbed the district court of "jurisdiction to proceed" against him, thus requiring a vacatur remedy (Kelley learned about the

---

[1] Readers might be interested in knowing that we had affirmed his conviction on direct appeal.  See United States v. Kelley, 402 F.3d 39, 43 (1st Cir. 2005).

[2] Government attorneys are "subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." See 28 U.S.C. § 530B(a).  And AUSAs in the federal district court in Massachusetts must be "in good standing" with the bar in every jurisdiction to which they are admitted.  L.R., D. Mass. 83.5.3(a)-(b).  Kelly thought — and thinks — that this AUSA was not in good standing with a Massachusetts bar rule prohibiting attorneys suspended for nonpayment of dues from practicing law until reinstated.  See Massachusetts Supreme Judicial Court R. 4.03(2)-(3), 4.01 § 17(7).

administrative suspension — since lifted — from a letter the United States Attorney sent to the Federal Public Defender).[3]

The judge denied Kelley's motion, however, concluding among other things that the evidence showed "that the United States Attorney, acting through qualified representatives, agreed with the grand jury that the indictment should issue." But the judge did grant a certificate of appealability ("COA" for easy reference) on whether the "indictment was invalid, and that [the district] court therefore lacked jurisdiction, because the [AUSA] who signed the indictment was not a licensed member of the bar."[4]

From that decision Kelley appeals. Unfortunately for him, though, we — after reviewing fact findings for clear error and legal issues de novo — end up affirming for many of the same reasons the district judge gave in his able opinion. See Bartolomeo v. United States, 960 F.3d 34, 45 (1st Cir. 2020) (discussing the standard of review).

---

[3] By the way: Kelley's motion purported to dress the same argument in the garb of a due-process claim. But we need not pursue that subject, given how Kelley argues the case to us. And further by the way: The government does not challenge the timeliness of Kelley's § 2255 motion.

[4] A COA is necessary for us to review a denial of a § 2255 motion. See Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). See generally 28 U.S.C. § 2255, Rules Governing Section 2255 Proceedings for the United States District Court, Rule 11(a) (stating that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant").

As he did below, Kelley basically raises a two-step argument:  (1) the bar-suspended AUSA's indictment signature constituted a Rule 7 violation that invalidated the indictment, (2) meaning the district court lacked jurisdiction, which (citing a civil case) he says he could not waive through his guilty plea. His argument fails at step (1), however.  So we need not consider step (2).  See generally PDK Labs. Inc. v. DEA, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) (stressing that "if it is not necessary to decide more, it is necessary not to decide more").

The principal purpose behind having a government attorney sign the "indictment is to indicate that he joins with the Grand Jury in instituting a criminal proceeding" — absent "his agreement no criminal proceeding could be brought on the indictment."  United States v. Wright, 365 F.2d 135, 137 (7th Cir. 1966); see also Little v. United States, 524 F.2d 335, 336 (8th Cir. 1975) (ditto); United States v. Levine, 457 F.2d 1186, 1189 (10th Cir. 1972) (same).  Kelley does not suggest that the purpose is otherwise.  "Substantial compliance rather than technical exactness" often satisfies Rule 7's provisos.  See United States v. Cox, 342 F.2d 167, 172 (5th Cir. 1965).  See generally 1 Charles Alan Wright et al., Federal Practice and Procedure:  Criminal § 123 (4th ed. 2020) [hereinafter "Wright et al."] (making that point

and collecting authority showing that "courts have been liberal in enforcing" Rule 7's signature "provision").

With this framework in place, we move from the general to the particular.

The undisputed affidavit evidence shows that in 2003, "the policy and practice" of the United States Attorney's Office that prosecuted Kelley "was not" to present the indictment

> to a grand jury until the indictment, together with a prosecution memorandum discussing the relevant facts, evidence, and law, had been reviewed and approved by, first, the Chief (or Deputy Chief, if there was one) of the Unit of which the AUSA was a part, and second, either the Chief or Deputy Chief of the Criminal Division.

The undisputed affidavit evidence also shows that "James F. Lang, then the Chief of the Major Crimes Unit, and James B. Farmer, then the Chief of the Criminal Division," "reviewed and approved" the "indictment of Kelley," as well as "the accompanying prosecution memorandum recommending indictment."[5]  The judge credited these accounts.  And because Kelley offers us no convincing reason to

_____

[5] Recall how Kelley pled guilty under a plea agreement.  That agreement's signature line listed four names:  Michael Sullivan, the United States Attorney; Farmer, the Chief of the Criminal Division; Stephen Heymann, the Deputy Chief of the Criminal Division; and the bar-suspended AUSA.  Farmer, a member of the bar, signed the plea agreement for the government.  And "office policy required both . . . Lang and . . . Farmer to review and approve the plea agreement before . . . Farmer signed it."

think the judge acted clearly erroneously, we must honor those findings.  See Bartolomeo, 960 F.3d at 45.

This spells trouble for Kelley.  The Supreme Court, after all, has long viewed a government lawyer's indictment signing as "necessary only as evidence of the authenticity of the document," see Wheatley v. United States, 159 F.2d 599, 600 (4th Cir. 1946) (citing In re Lane, 135 U.S. 443, 449 (1890)) — which jibes with the purpose of Rule 7's attorney-signature provision:  namely (and as noted above), to vouch for the indictment's authenticity and to signal the government's agreement with the grand jury's return of it, see, e.g., Cox, 342 F.2d at 172; 1 Wright *et al.* § 123.  Recall as well that Rule 7's "intent is for common sense to prevail over technicalities."  See 1 Wright *et al.* § 123; see also United States v. Morse, 613 F.3d 787, 793 (8th Cir. 2010) (citing authority from other circuits calling "signatures on the indictment . . . a formality").  And so it is unsurprising that many courts refuse to stamp "invalid" an indictment signed by a prosecutor with bar-license problems if other evidence shows the government backed the prosecution — with some cases explicitly saying that in such a situation, the complaining party cannot prove prejudice.  See, e.g., United States v. Bennett, 464 F. App'x 183, 185 (4th Cir. 2012) (holding that even though the AUSA "who signed the indictment had had his bar license administratively suspended," his "errant

signature was superfluous" because "the United States Attorney, an authorized representative of the Government, also signed the indictment"); Woods v. United States, Nos. 1:09CV917, 1:06CR189-2, 2010 WL 4746138, at *2 (M.D.N.C. Nov. 16, 2010) (denying a § 2255 motion because while an unlicensed AUSA had a hand in the indictment and plea-hearing phase, the § 2255 motioner "ha[d] not" shown "prejudice" since "other" AUSAs "handled several critical parts of the proceedings"); Parker v. United States, Nos. 4:98CR00236 GH, 4:03CV00058 GH, 2006 WL 2597770, at *15 (E.D. Ark. Sept. 8, 2006) (denying a § 2255 motion because while the prosecuting AUSA did not have a license in good standing in at least one state, the § 2255 motioner could "[]not establish any prejudice" since she "was acting on behalf of the U.S. Attorney who was licensed to practice and authorized the indictment to be presented to the grand jury"). The other evidence here — *e.g.*, the unrebutted affidavit testimony that the United States Attorney, through his designees, reviewed and approved the indictment — dooms Kelley's appeal.

In arguing for a different result, Kelley pins his hopes principally on United States v. Garcia-Andrade, No. 13-CR-993-IEG, 2013 WL 4027859 (S.D. Cal. Aug. 6, 2013). The district court there dismissed an indictment, concluding that because the AUSA who secured the indictment was not an active bar member when the

indictment came down, she was not "a proper representative of the government." Id. at *5-6, *9 (quoting United States v. Providence J. Co., 485 U.S. 693, 708 (1988)). But Kelley gets no help from Garcia-Andrade, because Garcia-Andrade discloses not even the slightest whisper of a suggestion that the supervisors in the United States Attorney's Office had — *as here* — examined and approved the indictment. See generally id. at *6 n.2 (noting that "no other attorneys work[ed] with [the AUSA] on th[e] case").

Providence Journal, a case Kelley talks up, is distinguishable as well. There, a special prosecutor filed a *certiorari* petition without getting the required consent from the Solicitor General. See 485 U.S. at 708. So, in other words, he lacked "authorization to appear on behalf of the United States." Id. And without "a proper representative of the Government," the Court had to dismiss the petition. Id. Contrastingly, in Kelley's case, multiple government representatives authorized his prosecution.

Kelley next says that the evidence about "other prosecutors . . . authoriz[ing]" his indictment "is of no moment" because they did not "sign" that document. But he does not develop this theory in any meaningful way. For example, he offers no on-point authority for his position. And he never explains how his view squares with the purpose of Rule 7's signature provision (to

- 8 -

show that the government joins with the grand jury in starting the prosecution) and with the courts' liberal enforcement of that provision.  See Cioffi v. Gilbert Enter., Inc., 769 F.3d 90, 94 (1st Cir. 2014) (remarking that "it is not our place to do a party's homework for [him]").

Kelley also claims that the fact that the bar-suspended AUSA "was the only prosecutor in the grand jury" proceeding violated Criminal Procedural Rule 6(d) — which says that "attorneys for the government" "may be present while the grand jury is in session." See Fed. R. Crim. P. 6(d)(1).  The district judge, among other things, deemed this issue waived by "perfunctory" treatment. Kelley thinks we should deem it not waived.  But even setting waiver aside, his Rule 6(d) claim is outside the COA issued by the judge.  Which means we cannot consider it.  See 1st Cir. Loc. R. 22.0(c)(1).  Pressing on, Kelley insists that this claim actually "falls well within" the COA.  And that is so because, in his telling, the judge issued the COA "on the question of whether the indictment was invalid" (his falls-within-the-COA belief perhaps explains why he did not apply to us "for an expanded" COA under 1st Cir. Loc. R. 22.0(c)(2)).  But we cannot agree with him, given how the judge stated with crystal clarity that he (emphasis ours) granted the COA limited to the effect of the bar-suspended AUSA's

"*sign[ature]*" on the indictment's "[]valid[ity]" and "DENIED" the "COA . . . as to all other claims."

Our opinion coming to a close, we note that the government told us in a post-argument letter that AUSAs "are required to prove their bar standing on an annual basis" and "that this certification requirement is currently formalized in the" Justice Department's internal manual.

All that is left to say is: **Affirmed.**